[Civ. No. 18165. Second Dist., Div. One. Aug. 9, 1951.]

JOHN NIBLACK, a Minor, etc., Respondent, v. THE AT-
CHISON, TOPEKA AND SANTA FE RAILWAY
COMPANY (a Corporation), Appellant.

Robert W. Walker and J. B. Kramer for Appellant.

Raoul D. Magana for Respondent.

WHITE, P. J.—Plaintiff, an employee of defendant rail-
way company, was injured in the course of his employment
while loading ice into a refrigerator freight car. In an action
brought by him under the provisions of the Federal Employ-

ers' Liability Act (U.S.C.A. title 45, § 51), judgment in his favor was entered upon the verdict of a jury, from which judgment the present appeal is prosecuted. Appellant railway company contends that a nonsuit should have been granted and that the evidence was insufficient to sustain the verdict, in that there was no showing of negligence on the part of the railway company or its employees proximately causing the injury.

From the evidence it appears that the operation of icing a refrigerator car at Needles, California, where the accident occurred, is conducted from a platform slightly higher than the top of the car. Ice, in 300-pound blocks, is brought to the surface of the platform by means of a conveyor chain. Each block is chipped into four pieces by a worker and then slid or skidded into a hatch or opening on the top of the car. Each car has four hatches, a pair at each end of the car, the two at either end being located on opposite sides of the car. The car is on a track parallel to the platform. For the purpose of conveying the ice to the hatches on the side of the car away from the platform, a device described as an "icing board" is used. This device consists of four steel pipes, 5 or 6 feet long, fastened parallel to each other about 4 inches apart. In practice, the icing board may or may not be used also in loading the nearby hatches, depending on the preference of the worker. In cutting and manipulating the ice from the platform to the hatch, the worker uses a pole tipped with two metal points, one in the shape of a hook, this instrument being known as a "pickeroo" or "Picaroo."[1]

In the icing operation, one man operates the "pickeroo" on the platform to slide the ice down the icing board to the hatch, while another man, standing on the car, tamps or packs the ice down into the bunker or compartment beneath the hatch opening. On the day of the accident, plaintiff testified, he was engaged in the latter operation on the far hatch, and the icing board was in use. His fellow employee, Taylor, was sliding the ice down toward him. Then, according to plaintiff, "we finished filling up this bunker and after he (Taylor) got enough ice in there why I was packing it down. So he took the board (the icing board) away and I closed down the hatch, if I remember right, and came up on to the dock." Plaintiff did not notice what Taylor did with the icing board,

[1]Pickaroon—A piked pole with a hook, used by lumbermen in river driving and by tracklayers in aligning railroad ties. (Webster's New Int. Dict., 2d ed., 1937.)

as plaintiff was occupied with closing the hatch. Plaintiff and Taylor then exchanged positions in loading the near hatch, plaintiff working on the platform and Taylor on the car. Then, plaintiff testified, "I stepped back to hook into another piece of ice with my bar that I had to shove it off in the hole and as I stepped back with my right leg I stepped onto this icing board and my foot slipped off of it some way, got twisted up and I fell down and twisted my leg, threw my knee out."

From the testimony it appears that the icing board had been placed near the edge of the platform and near the end of the car on which plaintiff and Taylor were working. Mr. Berkshire, the shift foreman, testified that he came along and helped the plaintiff shove ice from the dock to the hatch; that at the time of the accident the icing board was lying "opposite to the bunker" and between the witness and plaintiff; that plaintiff was facing toward the car and not toward the icing board. So far as any rule or custom was concerned, the witness testified that it was a "rule" that the man using the board would throw it down away from his work; that "we all have been instructed to work in a safe manner"; that the work is to be done as quickly as possible, and the board put away, but not "in a hazardous way"; that there "is no customary, set rule as to where to put it," but it is largely a matter of the opinion of the person who is using it. Further, from the testimony of this witness, it would appear that good practice required that the icing board be moved out of the working area and down in front of the next car to be loaded.

Appellant urges that there is no evidence that any place other than that where the icing board was at the time of the accident would have been a safer or more desirable position; that the accident resulted from plaintiff's taking a backward step onto the board, and could have resulted had plaintiff stepped onto some other object, such as a piece of ice; that the negligence was that of the plaintiff in not looking where he was placing his foot when he stepped backward.

Viewing the evidence, as we must, in the light most favorable to the prevailing party, we cannot hold that the verdict is unsupported by substantial evidence. The power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the verdict rendered by the jury; and when two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the

jury. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183].) Assuming that opposing inferences might be drawn by reasonable minds from the evidence presented in the cause now before us, the jury having adopted the one and rejected the other, its decision is binding upon the appellate court, the case being in substance the same as where the jury decides upon the weight of contradictory evidence. (*Arundel* v. *Turk*, 16 Cal.App.2d 293, 295 [60 P.2d 486], and cases cited.)

Plaintiff's cause of action was based upon the negligence of an employee of defendant railway company in placing the icing board in a dangerous position. The testimony and the photographic exhibits, together, showing the place where the work was being done, the nature of the work, and the tools used in the work, support the view that danger was reasonably to be anticipated if the icing board were not carefully moved out of the working area when not in use. Moreover, there was testimony that the employees had been instructed to remove the board to a safe place when it was not being used. The work, by its nature and the place where it was to be performed, as well as because of the fact that the cars had to be loaded as rapidly as possible, was essentially hazardous and placed a premium upon safe footing. The argument that the accident could have happened had plaintiff stepped backward onto some other object used in the work cannot prevail against the fact, as impliedly found by the jury, that he slipped upon an object which in the exercise of ordinary care should have been placed safely out of the working area. It can reasonably be said that it was as much negligence to leave the icing board where it was as it would have been to leave one of the pikes or poles used in the work lying on the dock, to be stumbled over by a worker intent upon his job of getting the ice into the cars as rapidly as possible.

The claimed variance between the allegations of plaintiff's complaint and the proof with reference to the location of the icing board at the time of the accident was not urged in the trial court; but a consideration of the claim, asserted for the first time on appeal, convinces us that no substantial prejudice resulted to defendant; and therefore such variance affords no ground for reversal.

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.